EMANUEL MISSIONARY BAPTIST CHURCH, PLAINTIFF, v. CITY OF NEWARK, DEFENDANT.

Tax Court of New Jersey

April 2, 1980.

Harvey L. Weiss for plaintiff (Stern & Weiss, attorneys).
Melvin Simon, Assistant Corporation Counsel, for defendant.

CRABTREE, J. T. C.

Plaintiff appeals from a denial of its claim for exemption pursuant to N.J.S.A. 54:4–3.6 [1] with respect to its property located at 228–238 Chancellor Avenue, Newark, New Jersey, and known and designated as Block 3706, Lot 19, on the Newark tax map. In issue are the last two months of 1974 and the entire tax year 1975. Defendant granted plaintiff's exemption claim for 1976.

At the pretrial conference, the parties stipulated all the relevant facts and jointly moved the submission of the case without trial, pursuant to R. 8:8–1(b). Briefs were thereafter filed and the case is ready for decision.

Plaintiff is a religious corporation organized and existing under the laws of New Jersey, specifically, N.J.S.A. 16:1–1 et seq., and with respect to such property under N.J.S.A. 54:4–3.6. Plaintiff's immediate predecessor in title, Peaceful Missionary Baptist Church, also a religious corporation organized and existing under N.J.S.A. 16:1–1 et seq., was granted an exemption with respect to the subject property pursuant to N.J.S.A. 54:4–3.6 for the tax year 1974 and filed the statement contemplated by N.J.S.A. 54:4–4.4 with defendant's assessor on or before November 1, 1973. Plaintiff acquired title to the subject property in connection with a mortgage foreclosure action. The sheriff's deed issued pursuant thereto, although dated October 29,

---

[1] The court notes that during the pendency of this action Assembly Bill 3509 was enacted amending this section. L. 1979, c. 471. Its effect has not been considered by this Opinion.

1974, was not delivered to plaintiff until sometime after November 1, 1974. On October 1, 1974 title was in Peaceful Missionary Baptist Church, which remained in possession until a date after November 1, 1974.

■ Plaintiff's status as an exempt religious institution and its use of the property for exempt purposes within the purview of *N.J.S.A.* 54:4–3.6 are not in dispute. At issue are (1) the legal effect of plaintiff's failure to file the statement contemplated by *N.J.S.A.* 54:4–4.4 on or before November 1, 1974 and (2) whether plaintiff's acquisition of the property after the assessing date vitiates the exemption. For the reasons hereinafter set forth, I find that plaintiff is entitled to the claimed exemption for the last two months of 1974 and the entire tax year 1975.

*N.J.S.A.* 54:4–4.4 provides pertinently:

> Every municipal tax assessor shall, on or before October 1, 1951, obtain from each owner of real property in his taxing district, for which a tax exemption is claimed, an initial statement under oath in such form as shall be prescribed by the Director, Division of Taxation, showing the right to the exemption claimed. Thereafter, and on or before November 1, of each year, said assessor shall obtain an initial statement, if one has not theretofore been filed. When an initial statement has theretofore been filed, then not later than . . . November 1 of every third succeeding year, said assessor shall obtain a further statement under oath from each owner of real property for which tax exemption is claimed, provided, however, that nothing herein contained shall require a further statement to be filed in the same year in which an initial statement shall have been filed but that the further statement shall thereafter be filed at the time and in the years hereinabove required for the filing of further statements. Each assessor may at any time inquire into the right of a claimant to the continuance of an exemption hereunder and for the purpose he may require the filing of a further statement or the submission of such proof as he shall deem necessary to determine the right of the claimant to continuance of the exemption.

> . . . . . . . . 

> The municipal tax assessor shall obtain the aforesaid statements in duplicate from the property owner, and the assessor shall file the duplicate copy thereof with the county board of taxation with his list of property exempt from taxation on or before January 10 following.

■ Defendant argues that plaintiff's failure to file the statement required by the latter statute by November 1, 1974 is fatal to its claim. Quite apart from the fact that plaintiff could not have filed the exemption statement before it took title and entered into possession, the assessor's failure to obtain the

statement does not vitiate the exemption otherwise allowable. *Blair Academy v. Blairstown*, 95 *N.J.Super.* 583, 232 *A.2d* 178 (App. Div. 1967), certif. den. 50 *N.J.* 293 (1967). The language of *N.J.S.A.* 54:4–4.4 does not permit the construction that the statement thereby contemplated is a condition precedent to the allowance of an exemption under *N.J.S.A.* 54:4–3.6. While exemption statutes are strictly construed against the exemption claimants, *Princeton Univ. Press v. Princeton* 35 *N.J.* 209, 172 *A. 2d* 420 (1961), the principle of strict construction must never be allowed to defeat the evident legislative design. *Princeton Tp. v. Tenacre Foundation*, 69 *N.J.Super.* 559, 563, 174 *A.2d* 601 (App. Div. 1961), quoted approvingly in *Boys' Club of Clifton, Inc. v. Jefferson Tp.*, 72 *N.J.* 389, 398, 371 *A.2d* 22 (1977). The evident legislative design is set forth with great particularity in *N.J.S.A.* 54:4–3.6, while *N.J.S.A.* 54:4–4.4 merely provides for the monitoring and verification of exemption claims by the assessor, with the triennial statement serving as the basic audit document.

Defendant's argument with respect to ownership of the subject property on the assessing date is also wide of the mark.

■ Ownership of the subject property on the assessing date (October 1, 1974) was in a tax–exempt religious corporation and its use of the property entitled it to an exemption on that date pursuant to *N.J.S.A.* 54:4–3.6. It is well settled that, absent a statute to the contrary, property is assessable or exempt with reference only to its ownership and use on October 1 of the pretax year. *Jabert Operating Corp. v. Newark*, 16 *N.J.Super.* 505, 85 *A.2d* 216 (App. Div. 1951); *Jersey City v. Montville Tp.*, 84 *N.J.L.* 43, 85 *A.* 838 (Sup.Ct. 1913), aff'd *per curiam* 85 *N.J.L.* 372, 91 *A.* 1069 (E. & A. 1913). This rule has been modified by statute with respect to the transfer of property from an exempt to a nonexempt owner. *N.J.S.A.* 54:4–63.26–63.28. Similarly, specific statutes apply to the conveyance of property from a nonexempt owner to the State of New Jersey or its agencies, and to the acquisition of property by a county park commission. *N.J.S.A.* 54:4–3.3b; *N.J.S.A.* 40:37–101. *See Springfield Tp. v.*

*Union Cty. Park Comm'n,* 163 *N.J.Super.* 332, 394 *A.*2d 907 (Law Div. 1978). However, no statute explicitly governs the conveyance of property from one exempt owner to another exempt owner. Thus, the general rule of the *Jabert* and *Montville Tp.* cases remains applicable to such a conveyance. *Inclusio unius est exclusio alterius.*

 Moreover, it is the use of property, not the status or character of its owner, that determines exemption. *Tippett v. McGrath,* 70 *N.J.L.* 110, 56 *A.* 134 (Sup.Ct. 1903), aff'd, 71 *N.J.L.* 338, 59 *A.* 1118 (E. & A. 1904); *N.J. Turnpike Auth. v. Washington Tp.,* 16 *N.J.* 38, 44–45, 106 *A.*2d 4 (1954); *Teaneck Tp. v. Lutheran Bible Institute,* 20 *N.J.* 86, 90, 118 *A.*2d 809 (1955). The undisputed facts here indicate that there was no interruption in the exempt use of the subject premises when title and possession were transferred from one tax exempt religious corporation to another.

Defendant argues for the application of *N.J.S.A.* 54:4–63.26. That statute provides pertinently:

> Whenever any real property is by law exempt from taxation and the right to such exemption ceases by reason of a change in use or ownership of such property, the same shall be assessable as omitted property as hereinafter provided . . .

Defendant contends that this statute deprives plaintiff of any exemption for 1974 by reason of a post–October 1, 1974, transfer of ownership. Defendant's argument is unsound, for it assumes the result. The statute in question, and its companion, *N.J.S.A.* 54:4–63.28, deal with the consequences of a loss of exemption by reason of a change in use or ownership during the tax year. It does not purport to deal with circumstances giving rise to the loss of exemption in the first instance. For the reasons stated above, I have concluded that the exemption was never lost and, therefore, that *N.J.S.A.* 54:4–63.26 is inapplicable.

A final observation is in order concerning what would appear, at least superficially, to be an onerous burden imposed upon the assessor of a large municipality, with thousands of line items, to monitor a post–assessing date transfer of exempt property. This burden is more apparent than real. To begin with, the

assessor is immediately placed on notice of a transfer of ownership by virtue of *N.J.S.A.* 54:4–31, which directs the county recording officer to transmit an abstract of every recorded deed to the assessor of the affected municipality within one week following the recording date. Secondly, the assessor is given until the end of the tax year following the year of transfer of ownership to inquire into the character of the property's use and to make an omitted assessment if it is determined that such use is no longer exempt. *N.J.S.A.* 54:4–63.31. Indeed, notwithstanding defendant's objection that responsibility for 40,000 line items precluded effective oversight of each claim for exemption, the omitted assessment in this case was made before December 1, 1975, well within the statutory deadline.

In view of the foregoing, I conclude that the assessments against the subject property for November and December 1974 and the entire tax year 1975 are invalid. Judgment will be entered for plaintiff in accordance with this opinion.